UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COVINGTON SPECIALTY INSURANCE CO.,

                         Plaintiff,

v.                                                                              1:20-CV-0613
                                                                                (GTS/DJS)
FRANCIS POTTER, individually d/b/a Indian
Lookout Country Club, Inc.; ANTOINETTE
POTTER, individually d/b/a Indian Lookout
Country Club; INDIAN LOOKOUT COUNTRY
CLUB, INC.; TIMOTHY M. ROTE; BARBARA
WALLACH; KATHY M. SNYDER; JEREMY T.
UHLL; and HARLEY RENDEZVOUS CLASSIC,
INC.,

                         Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| TRAUB LIEBERMAN STRAUS<br>& SHREWSBERRY LLP<br>  Counsel for Plaintiff<br>Mid-Westchester Executive Park<br>Seven Skyline Drive<br>Hawthorne, NY 10532 | LISA M. ROLLE, ESQ.<br>ERIC DAVID SUBEN, ESQ. |
| ROEMER WALLENS GOLD & MINEAUX LLP<br>  Counsel for Defendants Francis and Antoinette<br>  Potter and Harley Rendezvous Classic<br>13 Columbia Circle<br>Albany, NY 12203 | MATTHEW J. KELLY, ESQ. |
| COOPER, ERVING & SAVAGE, LLP<br>  Counsel for Defendant Indian Lookout<br>39 North Pearl Street, 4th Floor<br>Albany, NY 12207 | CAROLYN B. GEORGE, ESQ.<br>CHRISTOPHER P. FLINT, ESQ. |
| ABDELLA LAW OFFICES<br>  Counsel for Defendants Timothy Rote and<br>  Barbara Wallach<br>8 West Fulton Street, P.O. Box 673<br>Gloversville, NY 12078-0006 | ROBERT ABDELLA, ESQ. |

PILLINGER MILLER TARALLO                    MARIA MASTRIANO, ESQ.
  Counsel for Defendants Kathy Snyder and
  Jeremy Uhll
126 North Salina Street, Suite 215
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this insurance contract action filed by Covington Specialty

Insurance Company ("Plaintiff") against Francis Potter, Antoinette Potter, Indian Lookout

Country Club, Inc. ("Indian Lookout"), Harley Rendezvous Classic, Inc. ("Harley Rendezvous"),

Timothy Rote, Barbara Wallach, Kathy Snyder, and Jeremy Uhll (collectively, "Defendants"),

are the following two motions: (1) Plaintiff's motion for summary judgment; and (2) Plaintiff's

motion to amend its Complaint.  (Dkt. Nos. 68, 89.)  For the reasons set forth below, Plaintiff's

motion for summary judgment is granted, and Plaintiff's motion to amend its Complaint is

denied as moot.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in its Complaint, Plaintiff seeks declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202, regarding the parties' rights and obligations under an insurance policy that

Plaintiff issued to Defendants Francis Potter, Antoinette Potter, and Indian Lookout ("Indian

Lookout Defendants").  (Dkt. No. 1 [Pl.'s Compl.].)  Specifically, Plaintiff asserts that it has no

obligation to defend or indemnify the Indian Lookout Defendants in an underlying state court

personal injury action against them based on the following policy provisions and exclusions: (a)

the classifications to which the policy applies (i.e., injuries due to ownership or operation of a

farm, the insured's personal or non-business activities, or vacant land or buildings); (b) the

Absolute Auto Exclusion; (c) the Farm and Non-Agricultural Business exclusions; (d) the

Farmowner's Personal Liability Endorsement; (e) the Designated Premises Endorsement; and (f)

the All Participants Exclusion.  (*Id.*)  Plaintiff additionally asserts a claim for recoupment of all

defense costs it has incurred in defending the Indian Lookout Defendants.  (*Id.*)

        **B.**     **Undisputed Material Facts on Plaintiff's Motion for Summary Judgment**

      Unless otherwise noted, the following facts were asserted and supported with accurate

record citations by Plaintiff in its Statement of Material Facts and either admitted by Defendant

Harley Rendezvous Classic, Defendants Rote and Wallach, and the Indian Lookout Defendants

or not properly denied with accurate record citations.  (*Compare* Dkt. No. 69 [Pl.'s Rule 56.1

Statement] *with* Dkt. No. 73 [Def. Harley's Rule 56.1 Resp.] *and* Dkt. No. 75, Attach. 2 [Def.

Indian Lookout's Rule 56.1 Resp.].)

     1.     Plaintiff issued Policy Number VBA624383 00 to Defendants Francis and

Antoinette Potter (d/b/a as Indian Lookout County Club), for the policy period July 11, 2018, to

July 11, 2019.

     2.     The general liability insuring agreement provides, in pertinent part, as follows:

**SECTION I—COVERAGES**

**COVERAGE A--BODILY INJURY AND PROPERTY DAMAGE
LIABILITY**

**1.**     **Insuring Agreement**

     a.     We will pay those sums that the insured becomes
legally obligated to pay as damages because of "bodily
injury" or "property damage" to which this insurance
applies.  We will have the right and duty to defend the
insured against any "suit" seeking those damages.
However, we will have no duty to defend the insured
against any "suit" seeking damages for "bodily injury" or
"property damage" to which this insurance does not apply.

We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

> (1)     The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

> (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

3.     Significantly, by endorsement, the standard "Aircraft, Auto Or Watercraft" exclusion in the Commercial General Liability ("CGL") coverage form is replaced by the "Absolute Aircraft and Auto Exclusion," which states, in pertinent part, that coverage is excluded for the following:

### g.     Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by the insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

4.     The captioned action arises out of the underlying personal injury lawsuit, which is currently pending in the Supreme Court of the State of New York, County of Fulton, captioned *Timothy M. Rote and Barbara Wallach v. Kathy M. Snyder, et al.*, Index No. 07812/19 ("Underlying Action").

5.      By letter dated December 3, 2019, an attorney representing Defendant Harley Rendezvous provided notice to Plaintiff of the Underlying Action against Defendant Indian Lookout along with a copy of the complaint in the Underlying Action.

6.      In the Underlying Action, the plaintiffs allege that Defendant Indian Lookout is the owner (and entity in control) of premises at 1142 Batter Street, Pattersonville, New York, where an annual event known as the "Harley Rendezvous" is held.

7.      In the Underlying Action, the plaintiffs allege that, on June 21, 2019, at approximately 10:30 a.m., they were lawfully and properly operating a Harley Davidson motorcycle in a westerly direction on Batter Street when defendant Kathy M. Snyder failed to yield the right-of-way to the plaintiffs while attempting to enter the Harley Rendezvous event; Ms. Snyder allegedly turned her vehicle into the plaintiffs' direct path, causing a severe collision and injuries to both plaintiffs.

8.      In the Underlying Action, the plaintiffs allege that Defendant Indian Lookout is jointly and severally liable with Defendant Harley Rendezvous for the safety of event attendees, and for creating a pattern of traffic involving thousands of motorists traveling to and from the event and into and upon the entrance on Batter Street.

9.       Specifically, in the Underlying Action, the plaintiffs allege that Defendants Harley Rendezvous and Indian Lookout failed to have anyone directing traffic on Batter Street at the entries and exits to the event.

10.      The plaintiffs in the Underlying Action seek compensatory damages, costs, and disbursements.

11.      By letter dated December 23, 2019, Plaintiff denied coverage for the Underlying Action on multiple grounds, including, *inter alia*, the "Absolute Auto and Aircraft Exclusion,"

because the alleged incident arose out of an automobile accident, which is excluded under the Policy.

12.     Subsequently, by letter dated May 26, 2020, counsel representing Defendant Harley Rendezvous informed Plaintiff that the plaintiffs in the Underlying Action had moved for Defendant Indian Lookout's default in the Underlying Action.

13.     In the papers accompanying that motion, Mr. Rote averred under oath as follows regarding the nature of the incident at issue: "We were travelling westbound on Batter Street and the defendant driver, Kathy Snyder, was heading eastbound on Batter Street and she turned left in front of us; causing the vehicles to collide."

14.     Also in the papers accompanying that motion, plaintiffs' counsel in the Underlying Action averred under oath as follows regarding the nature of the Underlying Action:

> This action was commenced to recover money damages for the personal injuries suffered by the plaintiffs, Timothy M. Rote and Barbara Wallach, as a result of the negligence of the defendants above named, stemming from a motor vehicle accident that occurred on June 21, 2019 at 1142 Batter Street, Town of Duanesburg, County of Schenectady, State of New York.

15.     In answering the complaint in the Underlying Action, counsel for Defendant Harley Rendezvous asserted the following affirmative defense invoking the "serious injury" threshold applicable to motor vehicle accidents under New York law: "The plaintiffs did not sustain a "serious injury" as defined under Section 5102(d) of the New York State Insurance Law."

16.     Plaintiff appointed counsel in the Underlying Action to oppose the default motion against Defendant Indian Lookout, subject to the continuing disclaimer of coverage.

17.     In doing so, Plaintiff reiterated all of the grounds of the disclaimer, specifically including the "Absolute Auto and Aircraft Exclusion."

18.     Appointed counsel successfully opposed the default motion, and Plaintiff continues to provide a defense to Defendant Indian Lookout in the Underlying Action, subject to the disclaimer of coverage.

## C.     Parties' Briefing on Plaintiff's Motion for Summary Judgment

### 1.     Plaintiff's Memorandum of Law

Generally, in its memorandum of law, Plaintiff argues that summary judgment should be granted because the Absolute Aircraft and Auto Exclusion in the Policy relieves Plaintiff from having to cover the injuries alleged in the Underlying Action.[1] (Dkt. No. 68, Attach. 12, at 15-18 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that the Exclusion excludes coverage for "bodily injury . . . arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft," and thus excludes the injuries in the Underlying action, which were caused by an accident between a motorcycle and a car.  (*Id.*) Plaintiff argues that this provision has been enforced in cases involving auto accidents whether or not the insured themselves owned, operated, or otherwise were responsible for the vehicle at issue.  (*Id.*)

### 2.     Defendants Harley Rendezvous, Francis Potter and Antoinette Potter's Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Defendants Harley Rendezvous and Francis and Antoinette Potter argue that Plaintiff has an obligation to defend and indemnify the

---

[1]      In its motion for summary judgment, Plaintiff also requests that this Court grant a stay of the discovery pending resolution of the summary judgment motion.  (Dkt. No. 68, Attach. 12, at 14-15, 18-20.)  This request has already been addressed and resolved.  (Dkt. No. 80 [Order filed Mar. 26, 2021].)  As a result, the Court has omitted any arguments related to that request for a stay from its discussion of the contents of the parties' memoranda.

Indian Lookout Defendants.  (Dkt. No. 72, at 6-10 [Def. Harley's Opp'n Mem. of Law].)  More specifically, these Defendants argue that Plaintiff has failed to mention a controlling case, *Essex Ins. Co. v. Grande Stone Quarry*, 82 AD.3d 1326 (N.Y. App. Div. 3rd Dep't 2011), in which the Appellate Division, Third Department, found that a similar Absolute Auto Exclusion in a CGL policy was ambiguous.  (*Id.* at 7-10.)  These Defendants argue that the Court must apply New York state law in this instance because its jurisdiction is based on diversity and there is no federal aspect to the claims at issue.  (*Id.* at 7-8.)

### 3.     Defendant Indian Lookout's Opposition Memorandum of Law

Generally, in its opposition memorandum of law, Defendant Indian Lookout makes the following three arguments: (1) the Absolute Auto Exclusion is ambiguous (and is in fact "virtually identical" to the provision that was found to be ambiguous in *Essex Ins. Co.*), and interpreting it in the way that Plaintiff suggests would defeat the Indian Lookout Defendants' reasonable expectations of coverage; (2) even if applicable, the Absolute Auto Exclusion does not bar coverage for all of the allegations because the Indian Lookout Defendants' alleged marketing and organizing of the event was an "occurrence" under the policy and the complaint in the Underlying Action asserts claims of negligence against the Indian Lookout Defendants that go beyond the auto accident and Auto Exclusion; and (3) the cases relied on by Plaintiff in support of its motion are distinguishable and/or not binding on this Court because they involve exclusions with different language or application of the law of other states..  (Dkt. No. 75, at 9-12-15 [Def. Indian Lookout's Opp'n Mem. of Law].)

### 4.     Plaintiff's Reply Memorandum of Law

Generally, in its reply memorandum of law, Plaintiff argues that *Essex Ins. Co.* is factually distinguishable from the current action and not controlling.  (Dkt. No. 76, Attach. 16, at

5-10 [Pl.'s Reply Mem. of Law].)  Specifically, Plaintiff argues that the facts of *Essex Ins. Co.* are different from the current action in that *Essex Ins. Co.* involved a vehicle accident as a result of a condition on an insured's property (as opposed to as a result of vehicle-related conduct itself) and the language of the relevant exclusion was also different.  (*Id.*)  Indeed, even the negligence argument Defendant Indian Lookout asserts involves traffic patterns and the presence of motorists, all of which are vehicle related, and it is the act giving rise to liability (rather than the theory of liability alleged) that is determinative of whether an exclusion applies.  (*Id.*)  As a result, even if the policy in *Essex Ins. Co.* was found to not provide sufficient notice that a dangerous condition on the insured's property would not be covered, the policy here makes unambiguously clear that automobile accidents are excluded.  (*Id.*)  Additionally, Plaintiff argues that Defendant Indian Lookout's argument that reading the exclusion as Plaintiff suggests would deprive the Indian Lookout Defendants of the ability to obtain any coverage for such accidents (under any policy) is belied by the fact that Defendants Timothy and Antoinette Potter do in fact have other insurance for the Harley Rendezvous event specifically and are indeed being provided a defense under that other policy.  (*Id.*)

> ### D.   Parties' Briefing on Plaintiff's Motion to Amend the Complaint

> #### 1.   Plaintiff's Memorandum of Law

Generally, Plaintiff seeks leave to amend its Complaint to assert claims for material misrepresentation, equitable fraud, and recission of the insurance contract against the Indian Lookout Defendants.  (Dkt. No. 89, Attach. 7 [Pl.'s Motion to Am.].)  Specifically, Plaintiff argues that good cause is present to excuse its failure to amend before the Court-ordered deadline because the evidence underlying those proposed claims (i.e., testimony at the parties' May 24, 2021, depositions that Defendants Francis and Antoinette Potter were not using their

land for farming) was not known to Plaintiff before that time, it was out of Plaintiff's control that

those Defendants were not deposed sooner, and there was no suspicion of fraud before the

depositions.  (*Id.* at 5-6.)  Plaintiff further argues that there will be no prejudice to Defendants as

a result of amending the Complaint because Plaintiff has already produced all discovery, and

allowing amendment would promote judicial efficiency given that recission would provide an

alternative basis on which to find no obligation of Plaintiff to defend, cover, or indemnify the

Indian Lookout Defendants.  (*Id.*)  Finally, Plaintiff argues that the proposed amendments are

proper in that they are related to the underlying issues and claims in the Complaint even if they

are asserting new and distinct contractual claims that were not in the Complaint.  (*Id.* at 6.)

## 2.      Defendants' Opposition Memoranda of Law

Generally, in their opposition memorandum of Law, Defendants Harley Rendezvous and

Francis and Antoinette Potter make two arguments.  (Dkt. No. 94 [Defs.' Opp'n Mem. of Law].)

First, these Defendants argue that Plaintiff's request to amend the Complaint should be denied

because it is untimely, prejudicial, and futile.  (*Id.* at 5-11.)  Specifically, these Defendants argue

that (a) the application for the Policy did not contain any assertion that the property was being

used as a farm, (b) the motion to amend was filed well after the Court-imposed deadline of

November 1, 2020, (c) there is no good cause for late amendment because Plaintiff possessed the

relevant information at the time it issued the Policy, (d) it was one of Plaintiff's own employees

(and not Defendants Francis and Antoinette Potter) who listed the property as being farmed for

hay and there is no evidence that any misrepresentation was made by Defendants Francis and

Antoinette Potter, (e) the proposed amendments are also unduly prejudicial because the proposed

claims accuse Defendants Francis and Antoinette Potter of committing a criminal act, and (f)

Plaintiff never took any of the preliminary steps required by this Court's Local Rule 7.1(a)(2) before filing its motion to amend.  (*Id.*)

Second, these Defendants argue that Plaintiff's motion for summary judgment is or may be rendered moot by Plaintiff's motion to amend, and therefore the Court should deny the motion to amend.  (*Id.* at 11-12.)

Counsel for Defendant Indian Lookout also filed an affidavit opposing Plaintiff's motion to amend, in which counsel indicated that Defendant Indian Lookout joined in the opposition by the other Defendants.  (Dkt. No. 95.)

### 3.    Plaintiff's Reply Letter-Brief

Generally, in reply, Plaintiff makes four arguments.  (Dkt. No. 95 [Pl.'s Reply].)  First, Plaintiff argues that, contrary to Defendants' assertions, there is a representation made in the application signed by Defendant Antoinette Potter that 75 acres of the relevant land was used for farming.  (*Id.* at 1-2.)

Second, Plaintiff argues that the proposed amendments would not render its motion for summary judgment moot because the proposed amendments do not impact or change any issues related to that prior motion, but rather provide an additional basis for a finding that Plaintiff has no obligation to indemnify or defend the relevant Defendants.  (*Id.* at 2.)

Third, Plaintiff argues that, although it was unaware of the requirements in Local Rule 7.1(a)(2) before filing its motion, failure to comply with those requirements should not prejudice its client given that it has a meritorious claim that could not have been raised until the relevant information about use of the land was made available to it at the depositions.  (*Id.*)

Fourth, there will be no undue prejudice to Defendants because all discovery has already been disclosed, no additional burdens will be placed upon them as a result of the amendments,

and the proposed amendments do not accuse the Indian Lookout Defendants of any criminal conduct, but rather merely assert grounds for recission, and, notwithstanding, those parties will have a full opportunity to defend against such claim.  (*Id.*)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing A Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).  Implied in the above-stated burden-shifting standard is the fact that, where a

---

[2]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

non-movant willfully fails to respond to a motion for summary judgment, a district court has no

duty to perform an independent review of the record to find proof of a factual dispute.[3]

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 56.1(b).  What the non-movant's failure to respond to the motion does is lighten

the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement.[4]

Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

Rule 7.1(a)(3).[5]  Stated another way, when a non-movant fails to oppose a legal argument

---

[3]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[4]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1(b).

[5]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standards Governing Motion to Amend a Complaint

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993).  Specifically, pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.  *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010) (Suddaby, J.); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11,

---

plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

2007) (Lowe, M.J.).  "An amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Annunziato v. Collecto,*

*Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d

243, 258 [2d Cir. 2002]).

## III.   ANALYSIS

### A.   Whether Plaintiff Is Entitled to Summary Judgment Under the Absolute Auto Exclusion

After careful consideration, the Court answers the above question in the affirmative for

the reasons stated in Plaintiff's memoranda of law.  *See supra*, Parts I.C.1 & I.C.4.  To those

reasons, the Court adds the following analysis.

"Insurance policies are, in essence, creatures of contract, and accordingly, subject to

principles of contract interpretation."  *In re Estates of Covert*, 97 N.Y.2d 68, 75 (N.Y. 2001).

"Under New York law, a written contract is to be interpreted so as to give effect to the intention

of the parties as expressed in the unequivocal language they have employed."  *Albany Airport*

*HIE, LLC v. Hanover Ins. Gr., Inc.*, 391 F. Supp. 3d 193, 197 (N.D.N.Y. 2019) (Hurd, J.).

"'Thus, the Court's analysis properly starts with the four corners of the Policy to determine if

there is any ambiguity.'"  *Albany Airport HIE, LLC*, 391 F. Supp. 3d at 197 (quoting *Porco v.*

*Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 [S.D.N.Y. 2009]); *see also Law Debenture Tr. Co.*

*of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) ("[T]he initial question

for the court on a motion for summary judgment with respect to a contract claim is whether the

contract is unambiguous with respect to the question disputed by the parties.") (internal

quotation marks omitted).

Under New York law, "[a]n insurer seeking to avoid coverage under a policy exclusion

bears the burden of proving 'that the exclusion is stated in clear and unmistakable language, is

subject to no other reasonable interpretation, and applies in the particular case." *Superhost Hotels Inc. v. Selective Ins. Co. of Am.*, 160 A.D.3d 1162, 1162 (N.Y. App. Div. 3rd Dep't. 2018) (citing *Continental Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 [N.Y. 1993]); *see also U.S. Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500, 503 (W.D.N.Y. 2012) (stating that "ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement"). "Any ambiguity in an exclusion's language is construed against the insurer." *Superhost Hotels, Inc.*, 160 A.D.3d at 1162 (citing *Dean v. Tower Ins. Co. of New York*, 19 N.Y.3d 704, 708 [N.Y. 2012]). "'[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech.'" *Superhost Hotels, Inc.*, 160 A.D.3d at 1163 (quoting *Matter of Mostow v. State Farm Ins. Co.*, 88 N.Y.2d 321, 326-27 [N.Y. 1996]). Importantly, "[t]he plain meaning of the policy's language may not be disregarded to find an ambiguity where none exists." *DMP Contracting Corp. v. Essex Ins. Co.*, 76 A.D.3d 844, 846 (N.Y. App. Div. 1st Dep't 2010) (citing *Bassuk Bros. v. Utica First Ins. Co.*, 1 A.D.3d 470 [2003]).

Defendants primarily rely on the New York Appellate Division's decision in *Essex Ins. Co.* to support their argument that the Absolute Auto Exclusion is ambiguous, arguing that the automobile exclusion in that case (which was found to be ambiguous by the court) is "virtually identical" to the Absolute Auto Exclusion here.

In *Essex Ins. Co.*, the relevant exclusion stated as follows:

> [t]his insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury,' or any injury, loss, or damages, including consequential injury, loss, or damage, arising out of, caused by or contributed to: a. by ownership, non-

> ownership, maintenance, use, or entrustment to others of any
> 'auto,' aircraft, watercraft, snowmobile, all terrain vehicle (ATV),
> or motorcycle.    Use includes operation and 'loading' and
> 'unloading.'

*Essex Ins. Co.*, 82 A.D.3d at 1327.  The Appellate Division, Third Department, found that this

provision was ambiguous as to whether the exclusion should apply to "third parties using such

vehicles when injured by a condition of the insured's property."  *Essex Ins. Co.*, 82 A.D.3d at

1328.  Of note, the Third Department stated that the exclusion in that case could have been made

unambiguous as to application by, rather than removing the "of the insured" specification from

the GCL provision, instead adding words such as "or any other person" (as was done in other

exclusions within the same paragraph of the policy) to make clear that the exclusion "extend[s]

beyond acts of the insured to include all others."  *Essex Ins. Co.*, 82 A.D.3d at 1329.

Despite the Indian Lookout Defendants' and Defendant Harley Rendezvous' argument,

*Essex Ins. Co.* is not the absolute or sole authority on this issue, nor is it as apposite to the

situation in this case as the Defendants argue.  Rather, other New York courts have found that

language similar in nature to the Absolute Auto Exclusion was unambiguous.  For example, in

*DMP Contracting Corp. v. Essex Ins. Co.*, the Appellate Division, First Department, found that

an exclusion foreclosing "'bodily injury' . . . arising out of, caused by or contributed to by the

ownership, non-ownership, maintenance, use or entrustment to others of any 'auto'" was

unambiguous in excluding coverage for bodily injury "whether or not it is the insured who

owned, maintained, used or entrusted to others the subject automobile" because the plain

meaning of the language of the provision "focuses on the connection between a vehicle and the

injury, not between a vehicle and the insured."  *DMP Contracting Corp. v. Essex Ins. Co.*, 76

A.D.3d 844, 846 (N.Y. App. Div. 1st Dep't 2010) (affirming that "[a] fair reading of the policy

and the plain language of the provision should have placed the insured on notice that the

provision was applicable to the 'use' of 'any auto' regardless of ownership[,] [t]hus [ ] providing the insured with the opportunity to question or renegotiate coverage").[6]   The Appellate Division, Second Department, has also found an auto exclusion indicating that the insurer was not obligated to "pay for bodily injury, property damage, personal injury, or advertising injury that arises out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of . . . an auto" was unambiguous.  *Ruge v. Utica First Ins. Co.*, 32 A.D.3d 424, 425-26 (N.Y. App. Div. 2d Dep't 2006).

Similarly, other courts within the Second Circuit have found similar language to be unambiguous.  In *US Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500 (W.D.N.Y. 2012), the Western District of New York found that an auto exclusion was unambiguous in excluding coverage for personal injuries arising out of the use of any automobile, including by third parties, because "an ordinary businessperson could not have reasonably believed otherwise."  *LeBeau, Inc.*, 847 F. Supp. 2d at 504.  The exclusion in question stated that "[b]odily injury . . . arising out of the ownership, maintenance, use or entrustment to others of any auto" was excluded from coverage.  *LeBeau, Inc.*, 847 F. Supp. 2d at 503.  This exclusion modified the original version of the policy's auto exclusion by removing the words "any insured" from application to the auto provision; however, the qualifier "by the insured" remained applicable to aircraft or watercraft. *Id.*  The court found that it would be "patently unreasonable" for a reasonable businessperson to interpret the endorsement as maintaining a requirement that the automobile in question must be owned, used, or loaned by the insured based on the structure of the exclusion and the fact that

---

[6]      The Court rejects the Indian Lookout Defendants' and Defendant Harley Rendezvous' attempts to distinguish *DMP Contracting Corp.* from this action because their arguments focus on differences in the underlying factual circumstances of the case and ignore the fact that the First Department's finding in that action that the exclusion was unambiguous was as a matter of law and did not rely on any extrinsic evidence in making that finding.

such an interpretation would give the exclusion exactly the same meaning and effect as the original policy provision that it modifies. *Id.* at 505-06.

In *Nautilus Ins. Co v. 93 Lounge Inc.*, 14-CV-1029, 2017 WL 1207528 (E.D.N.Y. Mar. 31, 2017), the CGL was modified by an "Aircraft, Auto or Watercraft" exclusion endorsement that removed any reference to the "insured" from that exclusion, such that the exclusion now read, in relevant part, that the policy did not apply to "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto,' or watercraft." *Nautilus Ins. Co.*, 2017 WL 1207528, at *3. The Eastern District of New York found that this modified exclusion was unambiguous as to whether it would exclude injuries caused by the "use of an automobile by a third party, with no formal relationship to the insured," noting that "[n]othing in the language of the exclusion indicates that the exclusion was limited to only insureds and others with a formal relationship with the insured." *Id.* at *7. The Court further noted that the exclusion modification removed all references to the "insured" and "insured contract" and the language of the modified exclusion was not inconsistent with the rest of the policy. *Id.*

The Court finds that the Absolute Auto Exclusion, when taken in the context of the policy as a whole, is more akin to the above cases than to *Essex Inc. Co.* The Third Department in *Essex Ins. Co.* found it "significant" that other subdivisions of the same exclusion paragraph used language such as "any insured or any other person" to "make clear that those exclusions extend beyond acts of the insured to include all others," and that the failure of the relevant exclusion to use similar clarifying language rendered that portion of the exclusion ambiguous. *Essex Ins. Co.*, 82 A.D.3d at 1329. That is not the case here. Defendants have identified no provisions, either in the Absolute Auto Exclusion or other exclusions, that use clarifying

language which would render the omission of any such language in the Absolute Auto Exclusion as so inconsistent with the rest of the policy that the relevant portion of the Absolute Auto Exclusion could be interpreted as not extending to others beyond the insured.  The Court therefore agrees with the above cases that the plain language involved here, including the use of "*any* . . . auto" (without a qualification that it must be related to the insured) is clear and unambiguous about whether the provision applies to auto-related conduct by third parties using automobiles with no connection to the insured; it does.

Based on *Essex Ins. Co.*, Defendants also argue that, because the Indian Lookout Defendants could not have acquired automobile insurance to cover accidents caused by vehicles in which it had no insurable interest, the Absolute Auto Exclusion should not be interpreted as denying coverage for the claim here, which is essentially that the Indian Lookout Defendants created a dangerous condition on their property and/or at their event that caused the accident.[7] However, to the extent that the unavailability of other coverage might be a relevant factor in assessing whether a reasonable insured would believe that an exclusion applied to the relevant conduct, Defendants do not argue, much less provide any authority to support such an argument, that *no* insurance would have been available to protect Defendants from the type of occurrence in this case (i.e., an automobile accident involving third parties using automobiles not connected

---

[7]        The Court notes that *Essex Ins. Co.* does not stand for the proposition Defendants wish to impute to it.  The Third Department noted that the common purpose of the standard automobile exclusion (i.e., the one that excludes only activities "by the insured") in the CGL is that "liabilities excluded under the CGL insurance policy by reason of these provisions are covered under 'mirror image' insuring agreements of automobile, aviation, and marine insurance policies,'" and found that it was significant that the exclusion extended to vehicles other than those that "an insured would be expected to obtain separate insurance."  *Essex Ins. Co.*, 82 A.D.3d at 1328.  Although the Third Department therefore noted that an insured cannot typically obtain separate automobile insurance for third-party vehicles, it did not indicate that this fact alone rendered the exclusion ambiguous due to a question as to whether a reasonable insured would realize the scope of the exclusion; rather, the Third Department noted also that it was the inconsistent language in the policy that rendered the exclusion capable of misinterpretation.  *Id.* at 1328-29.

with the Indian Lookout Defendants).  While certainly the Indian Lookout Defendants may not

have been able to get *automobile* insurance on vehicles they do not own or drive, they offer

nothing to suggest that there is no type of insurance (such as an event-specific insurance) that

could potentially cover such occurrences.  The plain language of the Absolute Auto Exclusion is

clear that it applies beyond only automobiles related to the insured, such that it would have put

the Indian Lookout Defendants "on notice that the provision was applicable to the 'use' of 'any

auto' regardless of ownership[,] [t]hus [ ] providing the insured with the opportunity to question

or renegotiate coverage." *DMP Contracting Corp.*, 76 A.D.3d at 846.

Having found that the Absolute Auto Exclusion is unambiguous, the Court relies on the

plain meaning of its language when interpreting whether the circumstances in this case fall under

the ambit of the exclusion.  As Plaintiff argues, under New York law, "it is the act giving rise to

liability—not the theory of liability alleged—that is determinative of whether the insurance

policy exclusion applies." *LeBeau, Inc.*, 847 F. Supp. 2d at 504 (citing *Mount Vernon Fire Ins.

Co. v. Creative Housing, Ltd.*, 88 N.Y.2d 347, 352 [N.Y. 1996]).  Thus, contrary to the Indian

Lookout Defendants' and Defendant Harley Rendezvous' argument that at least some of the

conduct alleged in the Underlying Complaint would not fall within the exclusion,[8] the claims

---

[8]      In making this argument, Defendants rely primarily on *Essex Ins. Co. v. City of
Bakersfield*, 154 Cal. App. 4th 696 (Ct. of Appeal of CA, 5th Dist. 2007).  However, as the
Western District of New York discussed in *U.S. Specialty Ins. Co.*, that case was decided under
California state law, while this case is subject to New York state law, which requires the court to
consider the act giving rise to liability (rather than the theory of liability) when determining
whether an insurance exclusion applies.  *U.S. Specialty Ins. Co.*, 847 F. Supp. 2d at 504.  Thus,
although the California Court of Appeals found in *City of Bakersfield* that an auto exclusion did
not bar coverage for an automobile accident allegedly caused as the result of the defendant
negligently creating a dangerous condition, the relevant consideration in the current suit under
New York law is not whether Defendants created a dangerous condition through negligence, but
rather whether the act giving rise to liability involved an automobile.  The Court declines to rely
on California law when there are cases decided under New York law that provide more
appropriate guidance.

asserted against those Defendants are indeed all covered by the exclusion, because the injuries

alleged in this case all arise out of a traffic accident between a motorcycle and a car; whether or

not the traffic patterns the Indian Lookout Defendants and Defendants Harley Rendezvous

allegedly caused through negligence in failing to provide sufficient traffic control at their event

were a contributing factor to that accident, it is axiomatic that the accident in question could not

have occurred without the involvement of persons operating vehicles, and thus it is the accident

itself that gives rise to liability.[9]  *See LeBeau, Inc.*, 847 F. Supp. 2d at 506 (noting that "[i]t is

well settled under New York law that the term 'arising out of' is afforded broader meaning in the

context of general liability than the term 'caused by,' and that 'a liability policy exclusion which

excludes injuries arising out of the ownership, maintenance, or use of a motor vehicle' will

extend to any injuries 'originating from, incident to, or having a connection with the use of the

vehicle'") (quoting *Liberty Mutual Ins. Co. v. E. E. Cruz & Co., Inc.*, 475 F. Supp. 2d 400, 408-

09 [S.D.N.Y. 2007] [collecting cases]).  Further, as in *Nautilus Ins. Co.*, the Absolute Auto

Exclusion explicitly applies to "circumstances where the claims allege 'negligence or other

wrongdoing in the supervision, hiring, employment, training or monitoring of others, if the

occurrence which caused the bodily injury . . . involved the ownership, maintenance, use or

entrustment to others of any . . . auto.'"  *Nautilus Ins. Co.*, 2017 WL 1207528, at *8.  In the

Underlying Action, the plaintiffs asserted a claim of negligence against the Indian Lookout

Defendants and Harley Rendezvous related to oversight and planning (or lack thereof) of the

---

[9]     The Court notes that it finds to be baseless Defendant Indian Lookout's argument that the
marketing and advertising itself was an "occurrence" under the policy, because the marketing
and advertising was not "an accident, including continuous or repeated exposure to substantially
the same general harmful condition."  (Dkt. No. 75, at 10-11 [Def. Indian Lookout's Opp'n
Mem. of Law]; Dkt. No. 68, Attach. 2, at 23 [stating that the policy applies to bodily injury or
property damage only if such injury or damage was "caused by an 'occurrence'"], 37 [defining
"occurrence"].)  In other words, it was not the marketing or advertising itself that was injurious,
but rather the collision caused by the allegedly negligent traffic pattern that marketing and
advertising helped create.

allegedly dangerous traffic patterns their event created.  That claim, which involves allegations of negligence in supervising, hiring, or employing staff to regulate traffic and/or in monitoring the motorist patrons attending the event, arises from bodily injury caused by the use of automobiles and is therefore directly implicated under the plain language of the Absolute Auto Exclusion.

For all of the above reasons, the Court finds that the plain terms of the Absolute Auto Exclusion cover the circumstances in this case and grants Plaintiff's motion for summary judgment.

**B.     Whether Plaintiff's Motion to Amend Its Complaint Should Be Granted[10]**

Having found that the Absolute Auto Exclusion applies and thus Plaintiff has no duty to defend or indemnify the Indian Lookout Defendants, the Court finds that Plaintiff's motion to amend the Complaint to add claims against those Defendants should be denied without prejudice as moot for the purposes of this action.  *See Local 553, I.B.T. v. Local 803 Pension Fund*, 409 F. Supp. 3d 255, 261 (S.D.N.Y. 2019) (finding that a party's motion to amend was moot where the court had granted that same party's motion for summary judgment); *Bonta v. Accor N. Am., Inc.*, 07-CV-735, 2010 WL 11549397, at *6 (W.D.N.Y. Dec. 23, 2010) (finding that motion to amend the answer to assert additional cross-claims was moot where the court dismissed plaintiff's claims on a grant of summary judgment).

**ACCORDINGLY**, it is

---

[10]     Contrary to Defendants' argument, the Court finds that the motion to amend the Complaint does not render Plaintiff's motion for summary judgment moot.  The proposed amendments to the Complaint essentially add additional claims against those Defendants related to recission of the insurance policy for material misrepresentations made in the policy application, but does not materially alter any portion of the Complaint related to the basis for the summary judgment motion (i.e., the Absolute Auto Exclusion).

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 86) is **GRANTED**; and it is further

**ORDERED** that Plaintiff has no duty to defend or indemnify the Indian Lookout Defendants in the Underlying Action; and it is further

**ORDERED** that Plaintiff may withdraw from its defense of the Indian Lookout Defendants in the Underlying Action; and it is further

**ORDERED** that the counterclaims of Defendant Indian Lookout, Harley Rendezvous, Francis and Antoinette Potter, Timothy Rote, and Barbara Wallach are **DISMISSED** as a result of the Court's finding that the Absolute Auto Exclusion applies to the claims in the Underlying Action; and it is further

**ORDERED** that Plaintiff's motion to amend the Complaint (Dkt. No. 89) is **DENIED** **without prejudice** as **moot**.

Dated: September 21, 2021
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge